Good morning, Your Honor. If it pleases the court, Andrew Smith for appellant, I'll reserve four minutes. Okay, just watch the clock. I'll try. Your Honor, I looked at the video from 2019, the last time that was before this court, which I'm sure Your Honors have done, and it seemed to me that the whole 41 minutes was the judges telling travelers you should have interpled the money and putting the blame for the damages after the state court judgment was filed. Well, that's not the deal made with your client, was it? Pardon me? The deal made with your client wasn't asking travelers to interplead the money. It was to require travelers to pay the money over. Your client didn't propose interpleader as far as I can tell. No. The agreement doesn't call for interpleader. No, but the court then ... I don't really care what they said. I'm looking at an agreement and it says that travelers pays the money, some to this, some to that, but most of it into this account, which your client apparently controlled, and that no sums will be withdrawn from the escrow account until all such liens, referring to the Fraley attorney fee lien, have been finally resolved. Did that happen? Yes, but not enough. It would have done the trick. Putting it in an escrow is just as good as interpleading, but as I won't mention what the counsel said back then, but they did not put enough. Well, they put the amount that your client settled for. It may have turned out that that wasn't enough to satisfy the lien, but that travelers was called upon to put a specific amount in, didn't they? Fraley asked for an amount before arbitration was finished, but it should have been apparent that it was accruing interest and cost, and the usual is to interplead. It doesn't matter what you ask. An insurance company can absolve themselves of all possible future harm by simply interpleading. You're saying they should have made a different deal. Your client should have made a different deal. They shouldn't have made it. Both of them shouldn't have made a deal. They don't need a deal. They don't have to agree with her, and they don't have to agree with her lawyers if they either deposit the full disputed amount, plus perspective. There are lots of things your client could have done differently. In fact, if I look at this story, it's an incredible series of apparently poor judgment. That doesn't really change anything. Your client entered into an agreement not to withdraw funds until the Fraley claim had been resolved, and to hold travelers harmless and to indemnify travelers for any resulting costs. So how does that not bind your client today? Well, two things. She didn't require them. She had nothing to do with it. They said, we'll give it to your new lawyer, put it in an escrow. Now, I get the hold harmless. That's as broad as you can write, but the case law says that that agreement, which we did not get our day in court on. If we did get on the lien amount at the arbitration, we got our day in court on that. But the subsequent later stuff, there are defenses, and it doesn't matter if they're the great defenses or not. Oh, it does matter, because if they're not great defenses, there's no prejudice. I've never seen anything that suggests there's a meritorious defense. There is on the extra money that that agreement, all the cases seem to agree that unless there's a specific, I'm going to indemnify, despite the hold harmless, we're going to be indemnified for negligence. You agree with us. If we're negligent, we do the wrong thing. And I think not putting enough is negligent. But if we don't get our day in court, it doesn't matter the degree. It's like telling somebody, we had a criminal trial. We didn't give you good notice. That's what's wrong with this case. The notice, we didn't get our day. We couldn't show up when we knew about the motion. But, Mr. Smith, we don't, would we need to reach any of those if the approval of the settlement is appropriate in the compromise of the appeal? Yes, because that doesn't Why? So there's this discussion over, it's been framed as property, maybe it's an asset, maybe it's a liability, but the bankruptcy court approved the compromise, the settlement agreement explicitly. It only had three terms and one of them was that the appeal, this second appeal, was going away. So why doesn't that resolve it all? Well, there's two reasons it doesn't resolve it. One is, if we're alleging a void judgment, then that's a different animal. That doesn't become, if an appeal is dismissed, it doesn't become final. It doesn't become res judicata. Counsel, counsel, I have a question, if I may. Yeah. Why, in your view, is the default judgment void as distinct from voidable or erroneous in some other way? Well, the case law, it's void for two reasons. One is our argument about diversity and CCP 580, where in California is the applicable law. They even admitted it was a diversity case. They made a complaint. Travelers said diversity. They admitted it. Page 27 of the brief, the 580 says that it's, you can't put in a judgment higher than the amount in the complaint after a default. The case law like SAS says that's not procedural. That's substantive. I don't think there's a difference between personal jurisdiction and other type jurisdiction. There's a second reason, the CMRA. We mentioned it. They undoubtedly are going to say we waived it because we didn't spend a lot of time. It's simple. The court never got jurisdiction from the very beginning. They tried service under the CMRA statute. We did say in our brief that we went through the requirements, the main one of which is the owner of the box gives it to Ms. Kessler, didn't happen. That has to be reflected on the judgment role. When it's not on the judgment role, which it was not, I've never heard of judgment role. What is that? Well, it's the docket and the initial pleadings. Well, there are judgments against your client. They're void because she didn't get the original summons. How was she served the very first one? They, they tried to do... Is she been ignorant of this proceeding for the last several years? Well, you could, under California law, we cited... That's a yes or no question. No, not ignorant. And now all of these issues could have gone before the bankruptcy court with regard to the settlement as you make an argument saying, well, we got a good chance of success in fending off this judgment. And the bankruptcy court decided, mm-mm, doesn't look that way to me. And the district court affirmed that. And so we go back to Judge Johnstone's question. Why doesn't that settlement moot everything else that you're trying to talk about with regard to the underlying judgment? Well, it actually never was, Judge. Is there an answer to that question? Well, because it's not what happened. There was no ruling whatsoever on any of the things I'm saying. Judge Kaufman simply said, I can't... Are these issues not before the bankruptcy court? Did you not argue them to the bankruptcy court with regard to the settlement? They said... And the bankruptcy court ruled what? They said, we can't decide. She said, the judge, which is wrong, I don't, I can't overrule a district court. They're an arm of the, of the district court. And same with the district court. I think that might've been on the Homestead Appeal, but they also said, we're not going to overrule a district court. So travelers will be saying, this has been ruled in again and again. This is the first court to hear this argument I'm making to you now. Never ruled on, never discussed, never evaluated by any lower court about the bad service. Judge Graber asked you, what makes that void is distinguished from voidable? And I haven't heard an answer. If it's, if it's just voidable, then you've got the problem of not being able to demonstrate prejudice as a result. Well, because they say, the case law. Don't tell me what they say. What authority supports your proposition that the judgment is void? And I'll explain. SAS and other cases. If you don't serve a summons and that we cited case law, you could be sitting at the prove up. You could know it, hear about it all day. You could be running away unless you get a summons. If I sent a letter to a person in San Francisco and I said, I'm suing you in L.A. Superior Court. And by the way, here's what my lawsuit looks like. Here's a typo. No summons that there'd be no personal jurisdiction. And it's just like the lack of jurisdiction. If I sue on a patent in Admiralty Court, that's not subject matter. But the first one's lack of personal jurisdiction. And this, by the way, she's Miss Kessler isn't as she's portrayed. She's been she paid 1.3 million. Later, she paid 797,000. She wasn't trying to abscond. She got a judgment at first for 218,000. That judge said it was finally explicitly said it was final and that he didn't have any jurisdiction other than to award attorney fees and costs on an Travelers was sued and tort for interfering and settled for 791,000. Now they're trying to say that came from the judgment in the Superior Court judgment. It doesn't. It doesn't add up. That judgment went in on July 9, 2018, 2.9 million. 88 days later, the 797 was applied and 70,000 interest. Now it's 2.2 million on March 5th, 2018. 972 days later on on June 3rd, 2021, it was 2.77 million. And that's what that was paid. And yet after that, Mr. Smith, I guess I wanted to just try to come back to my first question for you. I mean, so, yeah, I understand why you're contesting the approval of the settlement. But if we were to decide that that were properly settled, that the trustee had the authority to settle that claim against this, Kessler's part of the estate. Do you agree that you don't have standing to bring this appeal? Oh, no, no. Well, no, we're not the appeal. If the trustee had authority to settle the claim against the estate, and it included Traveler's claim against Ms. Kessler, on what grounds could you stand to bring the appeal to contest the motion of vacating the judgment? Because case law says when we're saying it's void, and we've cited it, and it doesn't seem to be contrary, we can use 60B-4 to go to any court, this court, back to the district court, and we can get a review. Secondly, 538, I think it's 538 of the 585, 11 U.S.C. 586, the underlying claim, and these are cases that support the trustee, says we keep the underlying claim to object. It's a joint property with the trustee, and Collier says that's okay, so we could go... Okay, I think I have that. Do you want to save the rest of your time? Just one last thing. We did have an objection, which was we said we didn't have standing. We didn't appeal that because later we got standing when the trustee sued, so we still feel we have an objection reserved to 37. Okay, thank you, Mr. Smith. Ms. Agnes? Or Ms. Miller, I'm sorry. For the trustee? Correct. Thank you very much. Good morning, Your Honors. My name is Elisa Miller. I'm with Greenspoon Martyr, and I'm attorney for David Soarer, Chapter 7 trustee. I'm going to take the first seven minutes and address the issue of the settlement itself, and then Mr. Agnes will address the issue of the judgment. Your Honor, Judge Johnson, you hit the nail on the head. If this settlement is affirmed, the order approving the settlement, then the judgment is resolved. So what happens to the appeal? So the settlement says, and there's before I write a stipulation of dismissal, but it's not between the parties to the appeal. It may be a technical matter, but it's an important one. The caption before us says that Ms. Kessler is a party, not the trustee. So what's the right way, if we agree with you, to dispose of the appeal? It would be a stipulation between the trustee and travelers to dismiss, and the reason is because under Bankruptcy Code Section 541, the trustee accedes to all of the property of the bankruptcy estate. Property of the bankruptcy estate includes any type of claim, and while this Court hasn't ruled on the issue, both the Bankruptcy Appellate Panel and the Fifth Circuit had, that defensive appeals are property of the bankruptcy estate. So Ms. Miller, I read those cases, and I have to say, and I'd appreciate your take as a bankruptcy practitioner, I'm confused. So this is a liability against Ms. Kessler, and then arguably likely a liability of the estate. She's been sued for $4 million or so. The trustee settles that, compromises the claim, but it's a liability. I guess I don't understand the logic in Mosier, and then as adopted by the Fifth Circuit and the district courts. I'm trying to understand, how is that liability against the estate, which I think there's authority, assuming there's authority for the trustee to settle it, transmogrified into property by virtue of an appeal? That's nothing, I mean, the case authority and the state law statute is enormously broad. It just says that kind of anything that could be property is property. So why shouldn't we or couldn't we try to treat this more as what it looks like, as a liability against the estate that was settled, rather than some kind of property right? We don't do that if she had a motion to dismiss, for example, pending. We wouldn't say, well, that motion to dismiss the claim against her and the estate is property. Why would we do it with an appeal? Why isn't it just a liability? So the bankruptcy estate is comprised of not just tangible property, not just real estate, not just, in this case, there was artwork, which the trustee has subsequently abandoned. But it includes litigation. And in litigation, you have the risk of costs, both directions. You have the risk of attorney's fees here. Well, it includes claims by the estate against others. Correct. But this is a claim against the estate, which just seems like the bread and butter of other parts of the bankruptcy cut. However, if the appeal proceeds and the debtor, in our opinion, somehow wins, we don't see that that's feasible, that was fully briefed before the bankruptcy court and the district court, then there's potentially a right to costs against the estate. So it could turn into a further claim against the estate. Or if the debtor wins... Right, that all sounds like money going out of the estate, not money coming into the estate as property. If the trustee prevails, the trustee could have the right to costs back against travelers. Which is pennies on the dollar, perhaps, at a formula. But again, this is all turning on the presumptive characterization of this $4 million claim against the estate as somehow property that the estate enjoys for it. Again, we wouldn't say the same with respect to any other procedural aspect of the litigation. If Ms. Kessler has a good defense or the trustee has a good defense against travelers and moves to dismiss on those grounds, we wouldn't cite California law to say, oh, well, because the debtor and the estate might prevail in that, that is now magically property. It's always a liability, isn't it? I mean, I don't think whether you win or lose turns on this. I just think whether we get it right under the bankruptcy law turns on this. I believe that the Mosier case, the Delanoy case, and in Delanoy, this was actually an issue. And Delanoy came up to this court after the BAP approved a settlement. And the Delanoy, the Ninth Circuit in the Delanoy appeal, the issue was really whether or not the settlement was raised judicata as to nondischargeability claims. However, in order to reach that issue, the Delanoy Ninth Circuit court, this court did affirm that the appeal of the defensive appeal was property of the estate in order for the trustee to have dealt with it. There is language in the Ninth Circuit appeal. We said it could sell defensive appeal rights, which just sounds like another way of settling a claim against the estate. That's exactly what I was going to just turn to, Your Honor. You must have read my mind. Because regardless of whether there was a judgment here, there is a claim. And the objection to, if necessary, the resolution of claims is within the exclusive province of the trustee under section 30, and I apologize. As long as I've been doing bankruptcy law, I have to double check my sections. I can't keep the numbers straight anyway, so. Pardon? I can't keep the numbers straight, so. Under section 7045, that is a specific duty of the trustee to review and object to claims. You don't need a judgment to have a claim. Claims are asserted all the time pre-judgment. They're just, in some cases, unliquidated. Sometimes they're a contract claim that's very easily liquidated. But this is what a trustee's job includes. And approving a settlement is exactly what the trustee approved. But then the issue of whether it's property or not, in that analysis, would simply collapse into whether the court approved it. And, Your Honors, I see that my time is up, and I would like to turn this over. Unless you have any other questions, I'm going to defer to the Director.  Any questions? No, thank you. Thank you, Judge Graber. Thank you, Ms. Miller. Mr. Agnes. Good morning. Thank you. I'm here for appellees, Travelers Property Casualty Company of America, and Fidelity and Guarantee Insurance Underwriters, Inc. I don't have too much to add, Your Honors. I had a couple points just to re-raise, and obviously, if there's any questions. One thing I was just going to sort of bring up to the court is that the trustee and Travelers slash Fidelity, at one point, did file a joint motion to dismiss. I know the panel was talking about the settlement agreement being between the trustee and Travelers. There was also a motion to dismiss file that was docket number 35, and it was denied without prejudice to be able to re-raise. And so, I thought I would just bring that up because, again, if the settlement is effective and the trustee controls, you know, the rights to appeal, I know there was a motion to dismiss that the parties similarly would find as grounds to dismiss this appeal, and being the 3410 appeal. Otherwise, a couple issues raised for what I consider my part of the case was there was reference to CCP 580 being the reason for the judgment being void, if we should get to the issue of void judgment. This is already brief, so I don't want to take the panel's too much time of the panel, but Rule 54 is what applies. We've cited the Air Doctor, which is a Ninth Circuit case from last year that very conclusively describes this situation and why the void judgment issue is not a real issue. So, I guess a concern may be, as Kessler argues, this idea that the district court in denying the motion or in amending the judgment kind of said this intended to language that, well, you know, that was included. We granted a default judgment, it went up to the Court of Appeals, it changed materially, got much bigger, but that was all kind of contemplated. And I guess, you know, when we're dealing with a default judgment and, again, setting aside the questions of notice, assuming, you know, any litigant who's subject to a default judgment has to make a call, okay, this is a six-figure judgment, I'm not going to contest it. And then it goes up and it gets much bigger, and the litigant learns that, actually, it was a much bigger default judgment. It's in an entirely different procedural posture. Should we be troubled by the fact that it didn't seem entirely baked into that first judgment? I would say no, Your Honor. The whole posture of this case the entire time for the third-party complaint was, we don't think we owe any money to Fraley. Fraley's suit was against Kessler. Kessler decided not to pay and led to this giant judgment. But if somehow Fraley's right, we clearly have this indemnity agreement that calls for this exact situation. And that was the tenor of the third-party complaint from the start, which was, we're already incurring fees and costs defending against Fraley because you weren't able to resolve your issues with your prior counsel. So any current fees and costs that are outstanding and going forward is something we're seeking indemnity from you. And so fast-forward to the appeal and the last time and it coming back. We then move for a motion to amend the default. It's all on the same grounds. It's all on the same basis. But there is evidence that it was actually served, too. We did re-serve, even though there's no need to. Rule 5 does not require it, which is one of the issues raised by appellants in their brief, is that you needed to re-serve an amended pleading, even though it was a motion. Rule 5's not related to motions. It's only related to pleadings. And even Air Doctor, again in the Ninth Circuit last year, said that if all you were going to do was change the damages in a new pleading, even that does not need to be served. But we did. And this is one of those issues where the appellants have chosen to take certain arguments in their opening brief, certain arguments in their reply brief, and they're not always the same as what was before Judge Barat in the district court. And so it's not as proven up as it would be to show all the service attempts. But there is evidence, Your Honor, in the record at Volume 3 of the excerpts of record, pages 347 to 348, as well as 352 to 387. And then again in the second volume of the supplemental excerpts of record at pages 500 to 527, to show that even though it wasn't required, we did re-serve Ms. Kessler and attempt to serve her even with the motion to amend. So I'd say on two points, Your Honor. One is that no, because this was always the gravamonte of the issue, and this was always the issue. And it was a very interesting question that was pointed, which was, didn't Ms. Kessler know about this? And there's always been an intonation that she probably did. And there's no comment in the reply brief saying she wasn't served or wasn't aware of it. But on top of that, it's been sort of the whole issue the whole time. And just because the amount changes of a known potential liability, that doesn't change what the whole case was about from the start and what the judgment was by Judge Barat from the start. We're in an odd posture here, accepting the proposition that if the trustee settlement approval is affirmed, there are a whole standard review set of questions there. And what's odd about it is that one of the things, the key thing perhaps has to be evaluated, is the prospect of success on appeal of that underlying judgment. And what makes it odd is that we're the appellate panel that actually has that appeal. So even if we accept that the settlement is itself independent and perhaps first in sequence, we're sort of compelled to peer around the corner to make an assessment as to the likelihood of success, because what they're asking about is success in front of this very same panel. So I go back to the underlying judgment and pose the question to your colleague. In the end, what's what's the prejudice? And what I got back basically so far, at least, was a response that well, travelers has as mishandled this should have come in with an interpleader or done something else. So if the number didn't get so large, what's your response to that? The response to that, Your Honor, is as the court will recall, travelers infidelity won summary judgment and it was only overturned on appeal. The damages at issue that were paid by travelers were all fees and costs that Fraley did not pay. Strike that, sorry. That Kessler did not pay to Fraley. And that's what got confirmed by the California court. And that award includes 18% penalties by Fraley that was allowed pursuant to the attorney agreement interest, fees and costs included in the arbitration. And all that was paid to settle it was the interest that had accumulated in all these amounts that Kessler did not pay to Fraley. Travelers had no agreement with Fraley. This was a Kessler and Fraley agreement that, you know, travelers ended up having to pay based on the Ninth Circuit ruling the last time around. But did so knowing that, and you brought this up earlier, Your Honor, this was a signed agreement by Kessler. This whole idea of what was going to happen was signed by Kessler and everyone else. That these amounts would be paid, it would be handled a certain way, and if something went awry with Fraley, don't worry, we'll indemnify you. And so what ended up happening is at the end of the day, travelers had to pay the Fraley lien that Kessler owed and now is seeking indemnity just as it agreed to way back when. Mr. Agnes, it looks like you're out of time. I'll just ask my colleagues whether they have any other questions. None here. Thank you. All right. Thanks very much. Thank you, everyone. Mr. Smith. Based on the last statement, we'd be fine if that's what happened. The $791,000 was well above any lien. Fraley was called the lien holder, not just to identify him, that's his role, the lien holder, to get his lien. The $2.77 million, paid it in full. The $791,000 was later. Secondly, I agree with Your Honor. Pardon me. Could you move just a little bit closer to the microphones? A debt you owe is not your property. And a child custody hearing where you're trying to block someone getting child custody is not a piece of property that some higher bidder can get. Nobody, it's no characteristic of property. Nobody wants it. It is in the sense of it is something of value. They could get travelers to discount its claim in the bankruptcy proceeding in exchange for you giving up whatever you've got in your hand. So on some level, it is something of value that is being given up. Why can't it be treated as property? It wasn't here. Delanoy says that's a major consideration. In that case, there was $10,000 paid by the appellee that counted quite heavily in the appellee's behalf. In this case, no money and a discount of a void judgment is still void. But even if it's not, I mean, setting aside the voidness, even if it's not property, that just sweeps you back into the trustee's general authority to compromise liabilities of the estate. Well, again, there's a difference between them owing, owning the appeal and a 538, I believe, is 558. And Collier says we still have our claim about we don't owe as much money. And one other thing. Counsel keeps talking about 5-4-C and Rule 4. This ERIE requires this to be under stakeholder. That's not diversity is required. ERIE Supreme Court case says it's a diversity case. Air Doctor has nothing to do with diversity. There's no state court. It's the Latham Act, a federal court. There's no discussion of diversity, no discussion of California law. But even under that, if you take 54C and then you go to 4 and 5, it says what your honor said. When you try and do an amended default judgment, an amended, it says there clearly, like the state court standard, it can't be bigger in kind, bigger in amount, and it's 16 times bigger. There's no case where that's ever upheld. And it can't be different in kind. It's not paying lien amounts that Fraley never said it. It's paying tort damages to a different party. Thank you. I think I'm out of time. Thank you, Mr. Smith. All right. The case is submitted. We'll now move on to number 252139, Kessler v. Travelers.
judges: GRABER, CLIFTON, JOHNSTONE